UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD CHARLES MAILE,

        Petitioner,

                                             CASE NO. 04-CV-74806-DT
v.                                          HONORABLE ARTHUR J. TARNOW

BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**[1]

I.    Introduction

      Michigan prisoner Edward Charles Maile ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner is currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.[2] He is serving a parolable term of life imprisonment for a first-degree murder criminal sexual conduct conviction imposed by the Kent County Circuit Court in 1991. Petitioner was given a parole interview in June, 2001, but denied release on parole on July 26, 2001.

---

[1] Staff Attorney Cheryl Takacs Bell provided quality research assistance.

[2] At the time he filed his petition, Petitioner was incarcerated at the Saginaw Correctional Facility in Freeland, Michigan where Respondent was the warden.


Maile v. Lafler
04-CV-74806-DT
Page 2 of 17

In his pleadings, Petitioner asserts that the Michigan Parole Board's application of its "life means life" policy, to routinely denies parole release to individuals serving life sentences, violates the *Ex Post Facto* Clause. He also asserts that the trial court relied upon a misunderstanding of the parole possibilities in imposing his life sentence in violation of his due process rights. Respondent contends that Petitioner's *Ex Post Facto* claim is barred by procedural default and lacks merit.[3] For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

II.     Facts and Procedural History

Following a jury trial, Petitioner was convicted of first-degree criminal sexual conduct for his sexual assault of his nine-year-old niece. He then pleaded guilty to being a second habitual offender (for a prior sexual assault upon a young girl) and was sentenced to life imprisonment with the possibility of parole. In imposing sentence, the trial court stated:

> The problem the Court has is that the guidelines on this offense are very long, being form 10 to 25 years minimum, and the recommendation suggests we should be somewhere on the high side of that. This is Mr. Maile's second offense of this variety, and the psychological report of the first one suggests if he doesn't get help he will do it again, and the jury, at least, believed he did it again, I concur with the jury's result.
>
> On the other hand, what I think I need to do is make certain that Mr. Maile, while he's something less than an elderly man, has an opportunity to get out anc commence with life, if he makes progress with the sexual problems that he has, and if he doesn't, that he will be kept somewhere where he can't have access to any more little girls.

---

[3] Respondent has not addressed the due process issue.

> Rather than imposing a straight sentence for a term of years, which would be imposed without benefit of any good time, it's the court's intention to impose a sentence which will require a regular review by the parole board after an initial period of incarceration, which is at the low end of the guidelines.
>
> It is therefore the sentence of the Court that Mr. Maile be committed to the custody of the Michigan Corrections Commission to serve a term for the remainder of his life commencing June 4, 1991, with one day's credit. This means that he will be subject to review after 10 years, which is the minimum, but that the parole board can keep him for any term of years that they feel is necessary to protect the public.

Sent. Tr. pp. 12-14.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning prosecutorial misconduct and the proportionality of his sentence. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Maile*, No. 146683 (Mich. App. April 10, 1995) (unpublished). Petitioner's application for leave to appeal with the Michigan Supreme Court was denied, *People v. Maile*, 451 Mich. 921, 550 N.W.2d 536 (1996), as was his motion for reconsideration. *People v. Maile*, 453 Mich. 923, 554 N.W.2d 911 (1996).

Petitioner then filed a petition for writ of habeas corpus in this Court raising the same prosecutorial misconduct and sentencing claims, which was denied. *Maile v. Trippett*, No. 97-CV-72726-DT (E.D. Mich. July 21, 1998) (O'Meara, J.). Petitioner's request for a certificate of appealability was denied by this Court, *id.* (Nov. 19, 1998), and by the United States Court of Appeals for the Sixth Circuit. *Id.; Maile v. Trippett*, No. 99-5427 (6th Cir. 1999). The United States Supreme Court denied certiorari. *Maile v. Trippett*, 528 U.S. 903 (1999).

Petitioner subsequently filed a motion for relief from judgment in the state trial court asserting that he should be resentenced because the trial court erroneously believed that he would be given serious parole consideration after 10 years and every one to two years thereafter when it imposed sentence. The trial court granted the motion, stating in relevant part:

> At the time of sentencing this Court expected Mr. Maile to be given serious consideration for parole at the completion of 10 years and each year thereafter. The Court was unaware of the provisions of MCL 791.234(6) which limit parole review on parolable life sentences to a review at the end of 10 years with subsequent reviews only every 5 years thereafter. The Court believed that the first review would occur at 10 years and be followed by an annual or bi-annual review. Furthermore, of course, the Court could not anticipate that the Department of Corrections would change its existing policies by coming to the conclusion that when dealing with parolable life sentences "life means life."
> 
> * * *
> 
> Had this Court known that the Department of Corrections would change its policies and interpret the sentence imposed as, in fact, a sentence of life, it would have imposed a minimum and maximum term of years with the minimum falling somewhere on the lower end of the guidelines. The guidelines were 10 to 25 years and the Court intended that the defendant be considered for parole at the end of 10 years as we belief he, in fact, was but that that review by the Parole Board would be a serious consideration which if it first resulted in rejection would be repeated on an annual or bi-annual basis. Judges in sentencing rely upon not merely statutes which create a general framework but also upon existing regulations and policies followed by the Department of Corrections with which the Courts are familiar. Had this Court know of the impending change in policy which occurred several years later the sentence imposed would have been substantially different than it was.
> 
> * * *
> 
> We do not believe, nor do we believe any court would conclude, that every unanticipated change in a Department of Corrections regulation or policy justifies resentencing. But when that department chose to fundamentally alter the statutory scheme relative to parole on parolable life offenses with the effect of frustrating the intent of sentencing courts we conclude that a sentencing Judge in the exercise of discretion may order resentence under MCR 6.429.

*People v. Maile*, No. 90-53487-FC (Kent Co. Cir. Ct. Dec. 30, 2002). The trial court resentenced Petitioner to 12 to 40 years imprisonment.

The prosecution appealed to the Michigan Court of Appeals, which vacated the new sentence and reinstated the life sentence. *People v. Maile*, No. 246206 (Mich. App. April 21, 2003) (unpublished). Petitioner sought leave to appeal with the Michigan Supreme Court, raising the following claim:

> The Michigan Court of Appeals erred by reversing [Petitioner's] resentencing and reinstating his life sentence when the trial court had jurisdiction to resentence where [Petitioner] had originally been sentenced under a misapprehension or misunderstanding regarding what a "life" sentence would later become and when the trial court clearly stated that it based the original sentence on what a "life" sentence meant at the time.

The Michigan Supreme Court denied leave to appeal. *People v. Maile*, 469 Mich. 982, 673 N.W.2d 755 (2003).

Petitioner then sought authorization from the United States Court of Appeals for the Sixth Circuit to file a second or successive habeas petition. The Sixth Circuit ruled that authorization was unnecessary because the parole claim he raised was not reasonably available at the time he filed his previous petition, such that the current petition is not a second or successive petition. *See In re Maile*, Case No. 04-1492 (6th Cir. Oct. 29, 2004). Petitioner then filed the instant habeas petition asserting the following claim:

> The application of "life means life" to Petitioner's parolable life sentence, negating the sentencing court's intent for parole release, violates the prohibition against *Ex Post Facto* laws.

Respondent has filed an answer to the petition contending that it should be denied based upon procedural default and/or for lack of merit. Petitioner has filed a reply to the answer claiming that his *Ex Post Facto* Clause claim was fairly presented to the state courts and asserting that the trial court relied upon a misunderstanding of parole in imposing his life sentence.

III.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

IV.   Analysis

A.   Procedural Default

As an initial matter, Respondent contends that Petitioner's *Ex Post Facto* Clause claim is unexhausted and barred by procedural default because Petitioner failed to fairly present that claim to the state courts. Petitioner contends that he fairly presented his *Ex Post Facto* Clause claim to the state courts such that it is not barred by procedural default.

Procedural default is not a jurisdictional bar to a review of the merits of a habeas petition. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Trest v. Cain*, 522 U.S. 87, 89 (1997)). Consequently, a federal court is not required to address a procedural default issue before ruling against a habeas petitioner on the merits of his claims. When a procedural default issue presents a more complicated question and is unnecessary to the disposition of the case, a court may proceed directly to the merits of the petitioner's claims in the interest of judicial economy. *See Lambrix v. Singleterry*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004); *see also Strickler v. Green*, 527 U.S. 263, 282 (1999) (considering merits of habeas claims where such inquiry mirrored procedural default cause and prejudice inquiry); *see also Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (same).

In this case, resolving the procedural default issue is more complex than deciding the substantive claims on habeas review and may require some consideration of the merits of those claims. Accordingly, in the interest of judicial economy, the Court will address the merits of Petitioner's habeas claims without ruling on the procedural default issue.

      B.    *Ex Post Facto* Claim

Petitioner asserts that he is entitled to habeas relief because the current Michigan Parole Board's policy of routinely denying parole to defendants serving parolable life sentences – "life means life" – violates the *Ex Post Facto* Clause. Petitioner points to the decrease in the number of inmates serving parolable life sentences who have been paroled since the current Parole Board

took office.  Petitioner also points to statements made by the Michigan Parole Board that a life sentence means that an inmate will essentially serve the rest of his life in prison and will only be paroled in exceptional circumstances.  Petitioner claims that the Michigan Parole Board has effectively converted his parolable life sentence into a non-parolable life sentence in violation of the *Ex Post Facto* Clause.  Petitioner relatedly claims that the 1992 statutory amendments which decreased the frequency of mandatory parole interviews for individuals serving parolable life sentences violates the *Ex Post Facto* Clause.

As an initial matter, the Court notes that the United States Supreme Court has definitively held that there is no right under the United States Constitution for a lawfully convicted person to be conditionally released before the expiration of a valid sentence.  *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *see also Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Simply stated, there is no federal constitutional right to parole.  *See Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990).  While there is no federal constitutional right to parole, the Supreme Court has held that a convicted person may have a liberty interest created by a State's laws, a liberty interest which is subject to constitutional protection.  *Thompson*, 490 U.S. at 460 (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

In deciding whether a liberty interest arises under the laws of a State, the Supreme Court closely examines the language of the State's relevant statutes and regulations.  *Id*. at 461. "Stated simply," the Court explained, "'a State creates a protected liberty interest by placing substantive limitations on official discretion.'"  *Id*. at 462 (quoting *Olim v. Wakinekona*, 461 U.S.

238, 249 (1983)). In order to find that a liberty interest arises under a State's laws, the Court has required "that the regulations contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id*. (quoting *Hewitt*, 459 U.S. at 471-72.

Applying these standards, the state and federal courts in Michigan have concluded that a liberty interest in parole does not arise under Michigan law. *See Glover v. Michigan Parole Bd.*, 460 Mich. 511, 596 N.W.2d 598, 603-04 (1999); *Hurst v. Dep't. of Corr. Parole Bd.*, 119 Mich. App. 25, 325 N.W.2d 615, 617 (1982); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc); *Juarez v. Renico*, 149 F. Supp. 2d 319, 322 (E.D. Mich. 2001); *Lee v. Withrow*, 76 F. Supp. 2d 789, 792 (E.D. Mich. 1999). Because the Michigan Parole Board has discretion to grant or deny parole, a Michigan prisoner does not have a protected liberty interest in being paroled prior to the expiration of his or her sentence. *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994).

Petitioner first asserts that the current Michigan Parole Board's policy of declining to grant parole to inmates serving parolable life sentences absent exceptional circumstances violates the *Ex Post Facto* Clause. Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws. In *Collins v. Youngblood,* 497 U.S. 37, 41 (1990), the Supreme Court indicated that the *Ex Post Facto* Clause of the U.S. Constitution incorporated " a term of art with an established meaning at the time of the framing of the Constitution." The Supreme Court held that the *Ex Post Facto* Clause targets laws that "retroactively alter the

9

definition of crimes or increase the punishment for the criminal act." *Id*. at 43 (citing precedent). To fall within the *ex post facto* prohibition, a law must be retrospective, *i.e.*; "it must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29 (1981). However, the focus of the *Ex Post Facto* Clause "is not on whether a legislative change produces some ambiguous sort of 'disadvantage,'" nor on whether the amendment would affect a prisoner's "opportunity to take advantage of provisions for early release," as is alleged here, but on whether the change in the law "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't. of Corr. v. Morales,* 514 U.S. 499, 506, n. 3 (1995).

The presence of discretion given to parole boards in determining whether to parole an inmate does not displace the protections afforded by the *Ex Post Facto* Clause. *See Garner v. Jones,* 529 U.S. 244, 253 (2000). However, the Supreme Court has explained:

> To the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* (citations omitted).

Petitioner does not allege that there has been a change in the laws in Michigan regarding the factors to be used in the determination of whether to grant early release to an inmate serving

10

a parolable life sentence.  Instead, Petitioner points to the fact that the composition of the Michigan Parole Board changed in 1992 and now abides by the philosophy that an inmate who is sentenced to life in prison will serve the rest of his life in prison, absent "something exceptional."  Internal operating memoranda and policy directives of the Michigan Parole Board and the Michigan Department of Corrections for determining parole eligibility are not laws subject to the *Ex Post Facto* Clause, however, "because they are merely flexible guideposts" which assist the parole board in exercising its discretion regarding whether to grant parole to an inmate.  *Shabazz v. Gabry,* 123 F.3d 909, 915 (6th Cir. 1997) (citing *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977)).  "[F]urthermore, the policies behind the *Ex Post Facto* Clause do not support the position that internal policy directives and memoranda should be construed as laws.  The *Ex Post Facto* Clause exists to protect citizens from retroactive increases in punishment.  Changes in the administration and enforcement of statutes have little impact on these public expectations."  *Id.* at 916.  Neither a change in the body vested with granting parole nor a change in the manifestation of this discretionary power, which itself remains unchanged, violates the *Ex Post Facto* Clause.  *See Bailey v. Gardebring,* 940 F.2d 1150, 1156 (8th Cir. 1991).  The *Ex Post Facto* Clause is not violated merely because a parole board "takes a more jaundiced view of applications for parole," even though the inmate's sentence may end up being longer or harsher than he had hoped for when he committed the crime.  *See Prater v. U.S. Parole Com'n,* 802 F. 2d 948, 952 (7th Cir. 1986); *see also Schultz v. Rubitschun*, No. 1:05-CV-697, 2005 WL 3262435, *5-6 (W.D. Mich. Nov. 30, 2005) (parole board's philosophy regarding how

best to protect the public "is simply not a law within the meaning of the *Ex Post Facto* Clause"). The fact that the composition of the Michigan Parole Board has changed and that the current Parole Board has adopted a policy of granting early release less frequently to inmates serving parolable life sentences does not violate the *Ex Post Facto* Clause of the federal constitution. Habeas relief is not warranted on this basis.

Petitioner relatedly asserts that the 1992 statutory amendments which decreased the frequency and nature of parole interviews for inmates serving parolable life sentences violate the *Ex Post Facto* Clause. At the time of Petitioner's conviction, Michigan law provided that he would become eligible for parole after serving 10 years of his sentence and then would be interviewed by a parole board member every two years thereafter. *See* Mich. Comp. L. §§ 791.234, 791.244 (effective 1982). The 1992 amendments changed the frequency of the mandatory parole interviews to every five years and gave the Parole Board discretion to deny parole to inmates with a low probability of parole without a hearing. *Id.* (effective 1992).

In *Shabazz, supra*, the United States Court of Appeals for the Sixth Circuit specifically held that the 1992 amendments do not violate the *Ex Post Facto* Clause. *Shabazz*, 123 F.3d at 914-15. Applying *Morales*, the Sixth Circuit found that the 1992 amendments "do not change the standard for parole, but allow prisoners ample opportunity to petition the parole board for interviews" and that the amendments "allow the parole board to grant parole interviews of its own volition, and to grant prisoners parole without an interview." *Id.* at 914. The Sixth Circuit concluded that the 1992 amendments do not violate the *Ex Post Facto* Clause because they "do

not produce a sufficient risk of increasing the measure of punishment attached to the covered crime." *Id*. at 915; *see also Schultz*, 2005 WL 3262435 at *4 (*Ex Post Facto* challenge to decrease in frequency of parole interviews fails to state a claim under 42 U.S.C. § 1983); *Payne v. Lavigne*, No. 01-CV-72575, 2002 WL 230796 (E.D. Mich. Feb. 6, 2002) (Edmunds, J.) (decrease in frequency of parole interviews does not violate the Due Process Clause and does not warrant habeas relief). This Court is bound by *Morales, supra*, and the Sixth Circuit's decision in *Shabazz*. The Michigan Court of Appeals' decision reinstating Petitioner's life sentence is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. Habeas relief is therefore not warranted on the alleged violations of the *Ex Post Facto* Clause.

    C.    Due Process Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court violated his due process rights when it imposed a life sentence with an erroneous expectation that he would be eligible for parole and released within 10 to 20 years, as had been the case historically.

A sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which a defendant has no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Collins v. Buckhoe*, 493 F.3d 343, 346 (6th Cir. 1974). In *United States v. Addonizio*, 442 U.S. 178 (1979), however, the United States Supreme Court held that post-sentencing changes in the guidelines of the United States Parole Commission, which resulted in a longer minimum term of imprisonment than intended by the

trial judge in imposing sentence, did not provide a basis for the defendant to collaterally attack his sentence pursuant to 28 U.S.C. § 2255.  The Supreme Court stated that "there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Id.* at 187.  A sentence imposed by a judge in reliance upon assumptions concerning parole that are frustrated by subsequent actions of the Parole Commission is not based upon "misinformation of a constitutional magnitude." *Id.*  The Supreme Court further held that a judge "has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term." *Id.* at 190; *see also Quintero v. United States*, 947 F.2d 845, 1991 WL 224078, *4 (6th Cir. 1991) (following *Addonizio* and ruling that a miscalculation of the minimum sentence required for parole eligibility does not invalidate the sentence since the judge had no enforceable expectations about the release date).

A claim that a sentence violates a defendant's due process rights is foreclosed where the alleged misinformation consists of an incorrect prediction by the sentencing judge as to how a parole board will exercise its discretion. *See United States v. Schifano,* 748 F. Supp. 172, 175 (S.D.N.Y. 1990).  As another judge in this district has explained, a sentencing judge's assumptions that parole procedures will not change is "not an error that creates a due process violation" because the procedures are "consistently altered" and "there is no assurance that a person, after his conviction and sentence, will ever satisfy the substantive requirements necessary for parole." *Foster-Bey v. Rubitschun, et al.*, No. 05-71318, 2005 WL 2010181, *6

(E.D. Mich. Aug. 18, 2005) (Edmunds, J.).  Petitioner has thus failed to state a due process violation.  The Michigan Court of Appeals' reinstatement of his life sentence is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Habeas relief is not warranted on this claim.

V.	Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.  Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary